THOMAS BENDER,

        Plaintiff,

v.

KEITH SNYDER et al.,

        Defendants.

_____/

Case No. 2:19-cv-39

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Marshall and Lesatz.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Chaplain Keith Snyder, Deputy Warden Lincoln Marshall, and Warden Dan Lesatz.

Plaintiff states that he is Catholic and his religious beliefs require him to receive the sacraments of penance (confession) and the Eucharist on a weekly basis. Plaintiff alleges that in April of 2018, he sent Defendant Snyder a request to be placed on the weekly call-out for Catholic worship services. Plaintiff was placed on call-out for the non-denominational worship service conducted by Defendant Snyder. Plaintiff wrote to Defendant Snyder, objecting that he was Catholic and needed to attend Catholic services, which included the sacraments of Confession and the Eucharist. Plaintiff's request was denied. On October 28, 2018, Plaintiff sent a letter to Defendants Snyder and Lesatz, requesting to be placed on the call-out for the weekly Catholic services held in the 300 building, so that he could have access to Catholic clergy, make confession, and receive communion. Plaintiff also stated that if he could not attend services at AMF, he wished to be transferred to a prison where he could exercise his Catholic religious beliefs.

On October 31, 2018, Defendant Snyder sent Plaintiff a memorandum denying his requests, stating:

> As has been explained . . . it takes at least 5 requests to start a call-out and 4 to keep it going, we don't at present have a credentialed volunteer to lead a call-out, and one's access to call-outs of their declared religious preference is not a factor in where one locks. If I get at least five requests for Catholic call-out there will be a call-out. If we can get a volunteer qualified to minister the sacraments, you will have access to the sacraments. Even if neither of these conditions above can be met, you will necessarily be subject to whatever governs transfers, which I have also said I have neither functional understanding nor input in the process.

(ECF No. 1, PageID.4.)

Plaintiff then sent another letter attempting to resolve the denial of his request to attend religious services in the 300 building chapel, where Plaintiff asserts there are ongoing, active Catholic worship services, which are conducted by a duly ordained Catholic priest. Plaintiff's request was not granted. Plaintiff states that MDOC policy allows for inter-complex travel and contact between prisoners of different security levels for a wide variety of situations and reasons. Plaintiff further states that MDOC policy requires a prison chaplain to initiate transfers

2

for prisoners whose religious dietary needs cannot be met at their current facilities, and that this rationale also applies to religious needs for services.

On November 1, 2018, Plaintiff filed a grievance on Defendants Snyder and Lesatz regarding the denial of Catholic services. Plaintiff's grievance was denied by the Assistant Deputy Warden on December 3, 2018. On December 6, 2018, Plaintiff filed a step II grievance appeal, which was denied by Defendant Lesatz on December 10, 2018. On December 12, 2018, Plaintiff filed a step III grievance appeal, which was denied by the MDOC legal affairs division on January 7, 2019.

Plaintiff sent requests to be transferred for religious reasons to Defendant Marshall on November 1, 2018, November 23, 2018, and December 5, 2018. Plaintiff did not receive a response. Plaintiff filed a grievance on Defendant Marshall on December 6, 2018, which was denied on December 12, 2018. Plaintiff's step II and III appeals were also denied. Plaintiff claims that Muslim and Protestant prisoners are allowed to attend group worship, and that the denial of his ability to do so violates his right to equal protection.

Plaintiff claims that Defendants' conduct violated his First Amendment right to practice his religion and his Fourteenth Amendment right to equal protection. Plaintiff seeks declaratory and injunctive relief, as well as damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Marshall and Lesatz, other than his claim that they failed to respond to his letters or to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson*

*v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Marshall and Lesatz engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendant Snyder violated his equal protection rights because he allowed Muslim and Protestant prisoners to attend group services, but would not allow Plaintiff to attend Catholic services. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the

exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.

Plaintiff's allegation of discriminatory treatment is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional religious discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the Muslim and Protestant prisoners were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. Although Plaintiff claims that Muslim and Protestant prisoners were allowed to attend group services, he fails to allege that they had fewer than five requests for a call-out, as was the case with Catholic prisoners in Plaintiff's security level at the prison. Therefore, he makes no allegation that Muslim and Protestant prisoners

were similarly situated in all relevant respects. Plaintiff therefore fails to state an equal protection claim.

As set forth above, Plaintiff claims that Defendant Snyder refused to allow him to attend ongoing weekly Catholic services in the 300 building, depriving Plaintiff of the ability to make confession and receive communion. Plaintiff also appears to be claiming that Defendant Snyder refused to recommend him for a transfer to a prison where he could exercise his Catholic religious beliefs. The Court notes that on the face of the complaint, Plaintiff's First Amendment religious claim against Defendant Snyder is not clearly frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Marshall and Lesatz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment equal protection claim. Plaintiff's First Amendment claim against Defendant Snyder remains in the case.

An order consistent with this opinion will be entered.


Dated: May 22, 2019                                      /s/ Gordon J. Quist
                                                         GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE